**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ADMIRAL INSURANCE COMPANY,** | |
| *Plaintiff,* | |
| v. | **CIVIL ACTION** |
| | **NO. 5:25-cv-02379-JLS** |
| **EXCEL PETROLEUM, INC.,** *et al.,* | |
| *Defendants.* | |

**M E M O R A N D U M**

**SCHMEHL, J.** */s/ JLS*                                                                  **JULY 9, 2026**

This civil action arises from a dispute over an insurance provider's alleged obligations to

defend and indemnify its insured and other entities in underlying tort litigation.  The parties'

competing motions for judgment on the pleadings are now before the Court.  The motions require

the Court to determine, preliminarily, whether an assault-or-battery endorsement in a commercial

general liability policy limits the insurer's present coverage obligations to $25,000.  For the

reasons set forth below, the Court concludes that the endorsement so applies.[1]  Accordingly, the

Court grants the insurance provider's motion for judgment on the pleadings.

**I**

Plaintiff Admiral Insurance Company initiated this action to resolve disputes concerning

the scope of its defense and indemnity obligations under an insurance contract issued to Defendant

---

[1]      Since all parties agree that the insurer eroded the $25,000 limit, the Court need not reach
the subsidiary question as to whether coverage obligations exist for the insured's alleged
contractual indemnitees.  *See*, *e.g.*, Audio of Oral Arg. at 19:25-28 (defense counsel states
"assuming [Coverage D's $25,000 sublimit applies], I agree, it gets us nothing"); *see also Step-
Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 652 (3d Cir. 1990) (concluding that a District
Court need not issue a declaratory judgment where it would be "of no real utility").

Excel Petroleum, Inc., which, along with Defendants 234-248 LLC and Exxon Mobil, face potential liability in a civil action filed in the Philadelphia County Court of Common Pleas. According to that underlying complaint, on June 17, 2023, while at 234 North 63rd Street in Philadelphia, Darrien Antonio Vinson, Jr. "was shot in the face" by Versha Destouet-Johnson, a security guard allegedly employed by the Defendants. *See* Am. Compl. ¶ 13, ECF No. 1-3. Vinson's complaint asserts claims for assault and battery (Count I), intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), negligent hiring and retention (Count IV), and "vicarious liability/corporate negligence" (Count V).

Following the tender of the underlying action, a coverage dispute arose between the Defendants and Admiral. The Defendants contend that Admiral owes them a duty to defend and indemnify under a commercial general liability policy, while Admiral maintains that Endorsement AD 69 26 03 19 limits coverage for Vinson's lawsuit to a $25,000 sublimit. Furthermore, Admiral argues that Defendants 234-248 LLC and Exxon Mobil do not qualify as contractual indemnitees under the insurance policy and, therefore, Admiral owes them no duty to defend or indemnify.

## II

The parties agree that Pennsylvania's substantive law governs this diversity action. Under Pennsylvania law, "[a] court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). In reaching that determination, a court must construe the policy as a whole and "in accordance with the plain meaning of terms." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (applying Pennsylvania law). "'[I]f possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.'" *Id.* at 321 (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). That said, "if

2

the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous." *Id*.  An ambiguous provision "'must be construed against the insurer and in favor of the insured.'"  *Id*.  (quoting *Med. Protective Co.*, 198 F.3d at 104).

Once a court determines the scope of coverage, it then "examine[s] the complaint in the underlying action to ascertain if it triggers coverage." *Allen*, 692 A.2d at 1095.  "Whether a claim is 'potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.'" *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).  A court must accept the factual allegations of the underlying complaint against the insured as true and liberally construe them in favor of the insured.  *Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak Corp.*, 130 F. Supp. 3d 973, 980 (E.D. Pa. 2015).  "If, after conducting this analysis, [a court] conclude[s] even 'a single claim in [a] multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim.'" *State Farm Fire & Cas. Co. v. Motta*, 356 F. Supp. 3d 457, 462 (E.D. Pa. 2018) (quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

**III**

Admiral's insurance policy is organized through a "Schedule of Forms." *See generally* Ex. B at 7-9, ECF No. 1-4.  The body of the policy is set forth in the Commercial General Liability Coverage Form, labeled Form Number CG 00 01 04 13, which sets forth Coverages A, B, and C. Those coverages are then modified by several forms that follow.  Relevant here, Form AD 69 26 03 19, titled "Assault or Battery Event — Limited Coverage (CGL Coverage Form)," expressly "modifies" the Commercial General Liability Coverage Form and adds Coverage D.  *Id.* at 66-68;

3

*see also Hartford Fire Ins. Co. v. Davis*, 275 A.3d 507, 511 (Pa. Super. Ct. 2022) ("An insurance policy must be read as a whole, and not in discrete units.") (internal citation omitted).

The assault-and-battery endorsement operates first by broadly excluding all coverage for, among other things, "damages of any kind" that are "in any way connected with" an assault or battery on the insured's premises. Then, the endorsement restores limited coverage under the provision designated as "Coverage D." That section provides that Admiral will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" caused by an "assault or battery event," subject to a $25,000 event limit and a $50,000 aggregate limit.

Taken all together and construing the policy as a whole, the Court concludes Coverage D is clearly the only available coverage for claims arising from an assault-or-battery event. The relevant inquiry therefore is whether the underlying complaint alleges an event falling within that provision. It does. All five counts in the underlying complaint revolve around a single factual averment:

> 13.   On or about June 17, 2023 at or about 12:30 a.m., plaintiff, Darrien Antonio Vinson, Jr., was lawfully at the said premises when he was shot in the face by defendant, Versha Destouet-Johnson, a security guard employed by defendants, and/or John Does 1-111, causing plaintiff to suffer severe and serious injuries as more fully set forth herein.

Am. Compl. ¶ 13, ECF No. 1-3. So, as Plaintiff conceded at oral argument, the underlying complaint does allege an "assault or battery event," triggering coverage within the $25,000 sublimit. Accordingly, the Court concludes that Admiral's duty to defend Excel in the lawsuit captioned *Darrien Antonio Vinson, Jr. v. Exxon, et al.*, pending in the Philadelphia Court of Common Pleas under docket number 230901591, is subject to Coverage D and ends when Admiral exhausts the $25,000 sublimit of insurance. *See also QBE Ins. Corp. v. Walters*, 148 A.3d 785, 791 (Pa. Super. Ct. 2016).

Nevertheless, Defendants go on to argue that, even if the $25,000 sublimit applies, defense-litigation costs do not "erode" that sublimit. Their argument runs as follows: Defense costs do not erode policy limits under Coverage D because Coverages A and B expressly provide that such costs "will not reduce the limits of insurance." *See* Ex. B at 18-19, ECF No. 1-4. The Court disagrees. Defendants' argument ignores the structure and plain text of Coverage D, which again follows Coverage A, expressly "modifies" it, and specifically provides that Supplementary Payments do in fact erode the $25,000 sublimit. *Id*. at 66 ("Supplementary Payments will reduce the Each Event and Aggregate Sub-Limits of Insurance shown above."). That defense costs do not count toward the limits for claims under Coverages A and B, but do count under Coverage D, creates neither tension nor ambiguity. It is simply the policy language validly entered into by two sophisticated parties.

**IV**

For the reasons set forth above, the Court concludes that Endorsement AD 69 26 03 19 applies to the underlying *Vinson* action and limits Admiral's coverage obligations to Coverage D's $25,000 Each Event sublimit. The Court further concludes that, under the plain language of Coverage D, Supplementary Payments, including defense costs, reduce that sublimit. Accordingly, Admiral's motion for judgment on the pleadings is so granted, Defendants' motion is denied, and an appropriate order follows.

5